PIERRE LAPRADE *vs.* FITCHBURG AND LEOMINSTER STREET
RAILWAY COMPANY.

Worcester.     January 10, 1910. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Evidence,* Extrinsic affecting writings.     *Contract.*

At the trial of an action of contract where the declaration alleged that the defend-
ant, in consideration of the plaintiff's forbearance to sue him for injuries result-
ing from alleged negligence on the part of the defendant, promised to pay the
plaintiff $100 and certain wages until he had fully recovered, but, after paying
the wages for a time, refused to do so further, evidence of the plaintiff tended
to show that an oral agreement to such effect was made between the plaintiff
and an agent of the defendant, that then the defendant's agent drew up what
he said was a memorandum of the agreement which, after the plaintiff had
started to sign it, he finally refused to sign because it did not contain the agree-
ment for the payment of future wages, and that thereupon the defendant's agent
tore up the memorandum and drew one containing the agreement as to wages
properly stated, which the plaintiff signed and gave to the agent, who paid him
$100. The evidence of the defendant contradicted that of the plaintiff. No
such memorandum as that testified to by the plaintiff's witnesses was produced
by the defendant, but the defendant did produce a paper purporting to be signed
by the plaintiff by which he acknowledged the receipt of " wages in full, medi-
cal attendance, and $100 settlement in full." The defendant's agent testified
that the plaintiff signed such paper and that it was the only one that he did sign.
The plaintiff's witnesses denied that the plaintiff signed it. At the close of the
evidence the defendant asked that all of the evidence as to the oral agreement
made between the plaintiff and the defendant's agent be stricken out. The pre-
siding judge refused to order that the evidence be stricken out, and instructed
the jury that, if the negotiations resulted in a written agreement between the
parties, the action could not be maintained. The jury found for the plaintiff.
*Held,* that the evidence warranted a finding that the agreement between the
parties had not been reduced to writing, that the jury must have found so, and
therefore that the ruling asked for by the defendant was refused rightly.

CONTRACT with a declaration which, as amended, alleged in
substance that the defendant, in consideration of the plaintiff's
forbearing to sue the defendant for injuries alleged to have been
sustained by him through the defendant's negligence, agreed to
pay the plaintiff $100 and his wages amounting to $16.87 per
week " from the time of his injury until he should be perfectly
well from said injury and able to return to work," and that,
after paying the wages for several months, the defendant repu-
diated the agreement, denied that it had made it, and refused to
pay anything further. Writ dated January 17, 1908.

The case was tried before *Hitchcock*, J.   The facts are stated in the opinion.   At the close of the evidence, the defendant asked that "all parol evidence with regard to the signing of the release be stricken out," and asked for various rulings depending on the same principle.   The presiding judge refused to rule as requested and submitted the case to the jury who found for the plaintiff; and the defendant alleged exceptions.

The case was submitted on briefs.

*C. F. Baker & E. W. Baker*, for the defendant.

*C. E. Tupper*, for the plaintiff.

SHELDON, J.   There was evidence from which the jury could find that a verbal agreement was made between the plaintiff and the defendant acting through one Bennett for a settlement of the cause of action which the plaintiff claimed to have against the defendant for his personal injuries; and that by the terms of this agreement the defendant was to pay to the plaintiff the sum of $100, and pay his bill for medical attendance and his weekly wages until he should have recovered from his injuries.   According to the evidence put in for the plaintiff, Bennett then wrote out what purported to be a statement or memorandum of this agreement, and asked the plaintiff, who could not read English, to sign it, which the plaintiff either did or began to do.   But the plaintiff's son, who was present, observed that this paper did not contain the agreement for the future payment of wages, and told the plaintiff not to sign it.   Thereupon this paper was torn up and burned by Bennett, and he (Bennett) wrote another paper which did contain that stipulation and which the plaintiff signed and gave to Bennett and received from Bennett a check for the $100 which was to be paid down.   Bennett's testimony contradicted this, but it was for the jury to say what they would believe.

The defendant produced a paper purporting to be signed by the plaintiff under the name of Peter Pratt, and to be witnessed by the plaintiff's son and by Bennett, by which the plaintiff acknowledged the receipt from the defendant of his "wages in full, medical attendance, and $100 settlement in full for all claims on account of an accident to person or property."   Bennett testified that the plaintiff signed this, that the plaintiff's son and Bennett signed it as witnesses, and that this was the only paper which was signed and delivered to him at the time of the settlement.

The defendant put in also evidence of the genuineness of the signatures of the plaintiff and his son upon this paper. But the plaintiff and his son both testified that this paper was not the one which they had signed, and that the signature which the plaintiff had made was Pierre Laprade and not Peter Pratt. There was evidence that after this settlement had been made, the defendant did for about a year pay to the plaintiff his weekly wages without his doing any work; and there was contradictory evidence as to whether he had recovered from his injuries. There was no dispute that the paper which the plaintiff had executed had gone into the possession of Bennett.

Manifestly upon this evidence the jury might find that the agreement between the parties had not been reduced to writing. We cannot ourselves weigh the probabilities and undertake to say what their finding ought to have been. *Marvel* v. *Cobb,* 204 Mass. 117. *Electric Welding Co.* v. *Prince,* 200 Mass. 386, 392. *Hayes* v. *Moulton,* 194 Mass. 157, 163. They might accept the testimony of the plaintiff and his son, and find that he had not executed the paper produced by the defendant; they might find on the testimony of Bennett, that he executed no other paper, and so conclude that there was no written agreement. Or they might find that the paper produced by the defendant was the one which the plaintiff testified that he first signed or began to sign, that Bennett had not destroyed this, but had substituted for it some other paper and destroyed that instead; and that either the plaintiff had signed no other paper, or that Bennett had not accepted the paper which the plaintiff did sign, but had suppressed or destroyed it. But in this event there would be no written agreement between the parties; the first paper had not become an agreement and was not binding upon the plaintiff because he had not delivered it as an agreement; and the second, if there was one, had not taken effect as an agreement because the defendant or Bennett in its behalf had not accepted it.

We are of opinion accordingly that the judge did not err in allowing the jury to consider the evidence of the conversation between Bennett and the plaintiff. That conversation itself, the jury could find, constituted the agreement between the parties, as no question seems to have been raised as to Bennett's author-

ity.  The case does not fall within the rule of *Budro* v. *Burgess*, 197 Mass. 74.

The defendant has not argued its other exception.  Indeed, the judge instructed the jury that if the consultations and oral negotiations of the parties resulted in a written agreement which included the whole agreement and was the agreement between the parties, the action could not be maintained.  The jury must have found that there was no such written agreement, and that made most of the other questions immaterial.

*Exceptions overruled.*