HELENE M. LEE *vs.* PRUDENTIAL LIFE INSURANCE COMPANY.

Berkshire.     September 27, 1910. — October 18, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Verdict, New trial.    *Supreme Judicial Court.   Insurance,* Life.    *Evidence,* Admissions by conduct, Offer of compromise.

If, at a trial in the Superior Court, there is a verdict for the plaintiff, this court, on exceptions by the defendant to a refusal of the presiding judge to order a verdict for the defendant, can consider only whether there was at the trial any evidence in support of the verdict, and has no power to set aside the verdict upon the ground that it was against the evidence and the weight of evidence, such power being vested solely in the judge who presided at the trial.

On exceptions by the defendant to a refusal by the judge, who presided at a second trial of the case of *Lee* v. *Prudential Life Ins. Co.* after the decision of this court reported 203 Mass. 299, to rule that there was no evidence which would warrant a verdict for the plaintiff, the former decision was reaffirmed, and it was *held*, that evidence that an insurance company, after an investigation satisfactory to itself, wrote, issued, received payment of a first premium upon, and delivered a policy insuring the life of one in whose application for insurance was a stipulation that the policy should not take effect " until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application," in which the condition of his health was described as " good health," and that the agent of the company, who to a certain extent was charged with the duty of ascertaining whether the policy ought to be delivered, called at the home of the applicant on the day of the payment of the first premium, and, not finding the applicant at home, made some inquiries of and had some talk with the daughter of the insured about the insured's health, and that she answered his inquiries, after which the agent delivered the policy and received the premium, together with testimony of the daughter that at that time the physical condition of her father was good, would warrant a jury in finding that, at the time of the payment of the first premium, the applicant was in good health.

A contract of life insurance, which provided that on the death of the insured the insurance company would pay the amount thereof to the daughter of the in-

sured, contained an agreement that the policy should not take effect "until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while [the insured's] health is in the same condition as described in this application," and the condition described in the application was "good health." At the trial of an action brought by the beneficiary against the company after the death of the insured, the plaintiff testified that an agent of the defendant brought the policy to the home of the insured on an evening when the insured was absent but the plaintiff was present, that she had some talk with the agent at that time about the health of the insured, that the agent inquired as to the health of the insured and that she answered his inquiry, and that the policy then was delivered to her. At the close of the evidence the defendant asked the presiding judge to rule that the jury were not entitled to infer anything in regard to the true condition of the health of the insured from the fact that the defendant's agent delivered the policy to the plaintiff. In his charge to the jury, the presiding judge stated in substance that the ruling asked for was true so far as it related to the delivery of the policy in and of itself, but that, in connection with the evidence as to the conversation between the agent and the plaintiff and the evidence as to such investigation as the agent made before delivering the policy, such delivery was evidence to be considered as to the health of the insured. *Held*, that the modification of the ruling by the judge was not objectionable.

A contract of life insurance, which provided that on the death of the insured the insurance company would pay the amount thereof to the daughter of the insured, contained an agreement that the policy should not take effect "until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while [the insured's] health is in the same condition as described in this application," and the condition described in the application was "good health." At the trial of an action brought by the beneficiary against the company after the death of the insured, the plaintiff testified that an agent of the defendant brought the policy to the home of the insured on an evening when the insured was absent but the plaintiff was present, that she had some talk with the agent at that time about the health of the insured, that the agent inquired as to the health of the insured, and that she answered his inquiry, and that the policy then was delivered to her. At the close of the evidence the defendant asked the presiding judge to rule that "the statement made by the plaintiff to the defendant's agent, as to the condition of her father's health, was not evidence from which the jury might infer that he was in good health at the date of the delivery of the policy." The presiding judge refused to rule as requested on the ground that there was no evidence as to what statement the plaintiff made to the defendant's agent. *Held*, that the refusal was proper.

A contract of life insurance, which provided that on the death of the insured the insurance company would pay the amount thereof to the daughter of the insured, contained an agreement that the policy should not take effect "until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while [the insured's] health is in the same condition as described in the application," and the condition described in the application was "good health." At the trial of an action brought by the beneficiary against the company after the death of the insured, the plaintiff testified in cross-examination that the company through its attorney made an application to her for a post mortem examination of her father, that she "consulted with her attorney and refused to have it done. I would have refused anyway, but after consulting with my attorney I refused to have it done." In redirect ex-

amination she testified that she "knew the conditions which were attached to the disinterment or some of them." Later in the trial the defendant offered in evidence a letter from the attorney of the defendant to the plaintiff and her attorney, dated one month and twelve days after the death of the insured and a month and ten days before the bringing of the action, in which was a request for the post mortem examination, and the following: "If as a result of such post mortem, it should appear that the deceased was in good physical condition or if it should not be definitely determined that he was not [at the time of the delivery of the policy] in good physical condition and was not in a consumptive state, the claim would not be contested, but paid without delay. I . . . ask . . . that I may be present with physicians representing the company . . . [and] . . . suggest that two physicians for the claimant and two for the company be present." The letter was excluded. *Held*, that, the plaintiff having chosen to decline the offer contained in the letter without intimating any other reason therefor than her knowledge of the conditions attached to the proposed disinterment, the letter should have been admitted as showing the jury what those conditions were, so that they could determine whether any and what weight should be given to them and whether the plaintiff's refusal did not result solely or chiefly from a desire on her part to keep from the jury what might be, not only the best, but decisive evidence upon the issue before them.

A contract of life insurance, which provided that on the death of the insured the insurance company would pay the amount thereof to the daughter of the insured, contained an agreement that the policy should not take effect " until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while [the insured's] health is in the same condition as described in the application," and the condition described in the application was "good health." At the trial of an action brought by the beneficiary against the company after the death of the insured, the plaintiff testified in cross-examination that the company through its attorney made an application to her for a post mortem examination of her father, that she " consulted with her attorney and refused to have it done. I would have refused anyway, but after consulting with my attorney I refused to have it done." In redirect examination she testified that she " knew the conditions which were attached to the disinterment or some of them." At the close of the evidence, the defendant asked the presiding judge to rule that the jury were entitled to draw an adverse inference as to the condition of health of the insured on the date of the delivery of the policy from the refusal of the plaintiff to permit a post mortem examination of the body. With regard to such ruling the presiding judge charged the jury: "If you find that such a refusal was due to the desire on the part of this plaintiff to prevent the truth being known, then you will consider and give it such weight as you may deem it entitled to in determining whether or not he [the insured] was in good health at the time this policy was delivered. If you find that upon the evidence in the case such refusal was for other reasons entirely disconnected with the question whether or not he was or was not in good health at the time of the delivery of the policy, then such refusal would not be of any significance." *Held*, that the ruling asked for should have been given, and that the charge to the jury with regard thereto was erroneous, because the refusal by the plaintiff of the defendant's request was itself, if not satisfactorily explained, evidence tending to show a desire on the plaintiff's part to prevent the truth as to her father's health from being known.

A promise by an insurance company to a beneficiary claiming the amount of a policy after the death of the insured, contained in a letter delivered before

the bringing of a suit, to cease to object to the payment of the amount of the policy if the beneficiary would allow the production of competent and material evidence, which was in the beneficiary's control, and if that evidence should be in favor of the beneficiary, is not an offer of compromise, where there is no proposition that the beneficiary shall be bound by the evidence so obtained.

CONTRACT to recover the amount of an insurance policy issued by the defendant upon the life of George H. Lee for the benefit of the plaintiff.   Writ dated May 23, 1906.

The case previously was before this court when, in a decision reported in 203 Mass. 299, exceptions by the plaintiff to a ruling of the trial judge ordering a verdict for the defendant were sustained.

The second trial was before *Crosby*, J.   It appeared that in the application, which became part of the contract of insurance, was this agreement: "It is agreed that the policy . . . shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application," and that the condition described in the application was that of " good health."

As at the former trial of the case, there was evidence of the plaintiff tending to show that at the time of the delivery of the policy the insured was in " good health," and evidence of the defendant tending to controvert that of the plaintiff.

The testimony of the plaintiff in regard to the delivery of the policy by the defendant's agent Walsh and the conversation which then ensued was as follows: " A policy of insurance was finally issued on the life of my father.   Mr. Walsh brought it to the house in the evening.   My father was out somewhere on the street.   It was about the middle of January the policy was given to me and I had some talk with Mr. Walsh at that time about the health of father.   Mr. Walsh inquired as to the health of father and I answered his inquiry.   At this time the physical condition of my father was good.   I was the only one at home when Mr. Walsh brought the policy.   He gave it to me and I paid him all but a few cents of the $25.07.   The first payment, I don't know how many cents I was lacking.   Mr. Walsh gave me a receipt for the premium which I paid.   It was given to me that night."

It appeared that the insured died on February 21, 1906.

In regard to the defendant's request, mentioned in the opinion, for a post mortem examination of the body of the insured, the plaintiff testified in cross-examination as follows: " After my father's decease the company claimed to me that father had consumption and made a request of me that a post mortem examination be made of father. They made the application to me. I refused to have it done. The first request was not made through Mr. Mackey and Dr. M. M. Brown, but the first request was made through you, Mr. Couch [the attorney representing the defendant in cross-examining the plaintiff]. I consulted with my attorney and refused to have it done. I would have refused anyway, but after consulting with my attorney I refused to have it done." On redirect examination, the plaintiff testified : " It was in April after father was buried that the request was made to disinter the body. I know the conditions that were attached to the disinterment or some of them."

Later in the trial the defendant offered in evidence the following letter : " North Adams, Mass., April 3, 1906. To Helene M. Lee and P. J. Ashe, Esq., her attorney : — In the matter of the claim of Helene M. Lee against the Prudential Insurance Co. upon policy No. 720,415 upon the life of George H. Lee, late deceased, on behalf of the Prudential Co. and as its attorney in this claim I suggest to you that a post mortem examination of the deceased would materially aid in a solution of the doubtful questions involved, namely as to the conditions of health of the deceased at the time of the issuing of the said policy. I am informed that such a post mortem, if had without delay, will establish without doubt the physical condition of the deceased in December last when the policy was issued. If as a result of such post mortem, it should appear that the deceased was in good physical condition or if it should not be definitely determined that he was not in December last in good physical condition and was not in a consumptive state, the claim would not be contested but paid without delay. I therefore ask you that you permit and cause to be made a post mortem examination of the deceased and that I may be present with physicians representing the company at the time of such post mortem. I also suggest that two physicians for the claimant and two for the company

be present. Yours truly, Mark E. Couch, Atty. for the Prudential Insurance Company." The letter was excluded and the defendant excepted.

At the close of all the evidence, the defendant requested the following rulings among others:

" 9. That if the jury find that the plaintiff refused to permit the defendant to make a post mortem examination of the body of the insured, they may take such refusal into consideration as tending to indicate that the plaintiff, Helene M. Lee, knew that the insured was not in good health at the date of the delivery of the policy.

" 10. That the jury are entitled to draw an adverse inference as to the condition of health of the insured on the date of the delivery of the policy from the refusal of the plaintiff to permit a post mortem examination of the body."

" 18. That the jury are not entitled to infer anything in regard to the true condition of health of the insured from the fact that the defendant's agent Walsh delivered the policy to Helene M. Lee.

" 19. That the statement made by Helene M. Lee to the defendant's agent Walsh, as to the condition of her father's health was not evidence from which the jury may infer that he was in good health at the date of delivery of the policy."

" 23. That from all the evidence in this case, the plaintiff is not entitled to recover."

In his charge to the jury, the presiding judge, after having read the ninth and tenth rulings asked for by the defendant, said: " Now, gentlemen, with reference to those matters you have the evidence that this plaintiff declined and refused to allow, after the death and burial of the father of the body — of a post mortem examination held. If you find that such a refusal was due to the desire on the part of this plaintiff to prevent the truth being known, then you will consider and give it such weight as you may deem it entitled to in determining whether or not he was in good health at the time this policy was delivered. If you find upon the evidence in the case that such refusal was for other reasons entirely disconnected with the question whether or not he was or was not in good health at the time of the delivery of the policy, then such refusal would not be of any significance."

After having read in his charge the eighteenth ruling asked for by the defendant, the presiding judge said : " That is true so far as it relates to the delivery of the policy in or of itself. But, taken in connection with the conversation which Walsh had with the plaintiff Lee, you are to say whether or not, upon the evidence as disclosed and such investigation, if any, as you found Walsh made to ascertain the condition of the health of the insured, — you are to say what weight, if any, that is entitled to in determining whether or not the insured was in good health at that time."

Having read in his charge the nineteenth ruling requested by the defendant, the presiding judge said : " I refuse to give that for the reason that there is not any evidence, so far as I remember which was admitted tending to show that the reply made by the plaintiff was to the question put by Walsh, and so I refuse it because there is no evidence as to what statement the plaintiff made at that time. There is evidence to show that an inquiry was made by Walsh of the plaintiff at that time concerning her father and after she had made a reply that Walsh testified that he was satisfied that it was proper at that time to deliver the policy and relied upon whatever statement she made."

The jury found for the plaintiff ; and the defendant alleged exceptions.

*E. D. Duffield* of New Jersey, (*J. Guest* of New Jersey with him,) for the defendant.

*P. J. Ashe & C. P. Niles,* for the plaintiff, submitted a brief.

SHELDON, J. 1. The defendant has earnestly argued that a verdict ought to have been ordered in its favor. But the evidence upon which this contention is made differs in no material respect from that which was before us in this case in 1909. *Lee* v. *Prudential Life Ins. Co.* 203 Mass. 299. The weight of the evidence as reported does tend strongly now, as it did then, to support the claim of the defendant that George H. Lee, the person insured, was not in good health when the policy was issued and the premium paid. But the power to set aside a verdict upon the ground that it was against the weight of the evidence is vested in the judge who presided at the trial and cannot be exercised by us. We can consider only whether there was any evidence in support of the verdict. *Hayes* v. *Moulton,* 194 Mass.

157, 163, 164.  *Saures* v. *Stevens Manuf. Co.* 196 Mass. 543. *Laprade* v. *Fitchburg & Leominster Street Railway,* 205 Mass. 77, 79.  That question is settled against the defendant by our former decision in 203 Mass. 299.

2. The modification made by the judge in the defendant's eighteenth request was not objectionable, and there was no error in the refusal to give its nineteenth request.

3. But the defendant was aggrieved by the rulings made with reference to its request that a post mortem examination should be made of the remains of the insured.  The plaintiff on cross-examination had testified that this request had been made to her, and that after consultation with her counsel she had refused it, adding that she " would have refused it anyway."   On re-direct examination she testified that she "knew the conditions that were attached to the disinterment or some of them."   There seems to have been no contention and there has been no suggestion that any other conditions were attached to the proposed disinterment than those which were stated in the defendant's written request.   Those conditions (if they may be so called) were merely a promise to abandon the defense and to pay the plaintiff's claim without delay if upon the examination " it should appear that the deceased was in good physical condition, or if it should not be definitely determined that he was not . . . in good physical condition, and was not in a consumptive state," with a request that the defendant's attorney might be present with physicians representing the company, and a suggestion that two physicians for the claimant (the plaintiff) and two for the company might be present.

Under these circumstances, the defendant's written request should have been admitted in evidence.   It was a request to the plaintiff to consent to an examination which might afford what could be found to be the best evidence upon the main issue in controversy.   It was accompanied by the defendant's promise to risk its defense entirely upon the evidence thus to be obtained, without any suggestion that the plaintiff should be bound thereby. She chose to decline the offer, without intimating any other reason therefor than her knowledge of the conditions attached to the proposed disinterment.   It was the right of the defendant to show the jury what those conditions were, and to have it deter-

mined whether any and what weight should be given to them, and whether the plaintiff's refusal did not result solely or chiefly from a desire on her part to keep from the jury what might be, not only the best, but decisive evidence upon the issue before them.

The instructions given upon this question were insufficient. The jury, to use the language of the defendant's request, were "entitled to draw an adverse inference as to the condition of health of the insured on the date of the delivery of the policy from the refusal of the plaintiff to permit a post mortem examination of the body." *Stack* v. *New York, New Haven, & Hartford Railroad,* 177 Mass. 155, 158. But the instruction given did not allow them to consider her refusal unless they found also that her refusal was due only to a desire to prevent the truth from being known. The refusal itself, if not satisfactorily explained, was evidence tending to show such a desire on her part. There was here an absolute refusal to allow any examination, not merely a personal objection to a particular physician, as in the Stack case already referred to. Of course, if it appeared that her refusal was due wholly to other reasons entirely disconnected with the issue and sufficient to justify her in keeping from the jury the evidence asked for, no inference should be drawn against her.

The fact of the defendant's request and of the plaintiff's refusal, was before the jury, and it has been suggested that for this reason the defendant was not aggrieved by the exclusion of the paper itself. This might be so if the plaintiff had not rested her refusal, in part at least, upon the conditions stated in the paper. As we have already said, this made it proper that the conditions should be made known to the jury.

Nor could the paper be excluded as being an offer of compromise. A promise to abandon a defense if the plaintiff will allow the production of competent and material evidence which is in her control, if that evidence shall be in her favor, cannot be styled an offer of compromise, when there is no proposition that she shall herself be bound by the evidence.

*Exceptions sustained.*